## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANTONIO ROBINSON,

  Plaintiff,

v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY ("WMATA")

  Defendant.

Civil Action No. _____

JURY TRIAL DEMANDED

### INTRODUCTION

1.  This is an action for violation of due process rights and breach of contract for which
    protections are granted, in the Fifth Amendment of the United States Constitution, U.S.
    Const., amend. V and Plaintiff's Settlement Agreement.  This action arises from
    Defendant's December 23, 2013 rescission of Plaintiff's employment reinstatement as
    Bus Operator for the Defendant.

2.  Plaintiff, through counsel, submits this Complaint against Defendant and requests
    declaratory, injunctive, and monetary relief for violation of due process rights and breach
    of contract.

### PARTIES

3.  Plaintiff, Antonio Robinson (hereinafter "Plaintiff"), resides at 206 20th Street, NE,
    Washington, DC 20002.  From May 27, 2008 to December 1, 2011, Plaintiff was
    employed as a bus operator by Defendant.

4.  Defendant, Washington Metropolitan Area Transit Authority (hereinafter "Defendant" or
    "WMATA"), is a regional transportation system in the national capital area. Defendant
    has its place of business located at 600 Fifth Street, NW, Washington, DC20001.

## JURISDICTION

5.  This Court has jurisdiction under 28 U.S.C. §1331 as this claim arose under the
    Constitution, laws, or treaties of the United States.  Federal question jurisdiction arises
    pursuant to the WMATA Compact – which established WMATA as an "interstate
    compact agency" and governs all areas of its operations in the State of Maryland, the
    Commonwealth of Virginia, and the District of Columbia – because the Compact
    provides the United States District Courts with original jurisdiction for all suits involving
    WMATA. *See* WMATA Compact, as amended through August 2009. *See id.* at 33.

## VENUE

6.  Venue is proper pursuant to 28 U.S.C. §1391 because the Defendant is an interstate
    agency and the events giving rise to this complaint occurred in the State of Maryland and
    the Commonwealth of Virginia. Further, Plaintiff resides within this judicial district and
    Defendant has its principal place of business within this judicial district.

## STATEMENT OF FACTS

7.  On May 27, 2008, Plaintiff was hired by Defendant WMATA as a Bus Operator and
    was assigned to the Bladensburg Division.

8.  Plaintiff continued to be employed as a bus operator for Defendant WMATA for the
    next three and one half years.

9.  On November 7, 2011, Plaintiff reported to work and completed the first part of his
    assignment.  During his authorized lunch break, while driving back to work to begin the
    second part of his assignment, he was stopped and arrested by the Mount Rainier,
    Maryland Police. The police officer informed Plaintiff that Plaintiff's license had been
    "disqualified", but admitted to Plaintiff that he did not know what "disqualified" meant.
    The officer then placed Plaintiff under arrest and took him into custody. The officer
    alleged the following charges: driving on a suspended license, driving with an out-of-
    state license, driving on a revoked out-of-state licensed, driving without required license
    and authorization, and failing to stop at a stop sign.

10. Thereafter, Plaintiff was issued and served with a Fugitive from Justice Virginia
    Warrant.

11. While in custody, Plaintiff called the WMATA Bladensburg Division and left a voicemail for Ms. Clarissa Cannon, Office Manager, to inform her of his delayed return to work as a result of the arrest.

12. Plaintiff was held in custody by the Prince George's County police for nearly two weeks and was later extradited to Virginia where he remained in custody for an additional two weeks.

13. As a result of his incarceration, Plaintiff was unable to return to work on November 7 – 18, 2011. Plaintiff was also unable to communicate with WMATA or any of its representatives during this time.

14. On November 16, 2011, Joseph Barber, WMATA Office Manager, called Plaintiff's phone number and reached voicemail. Thereafter, Mr. Barber called Plaintiff's emergency contact, Ms. Sheila Colbert, Plaintiff's mother, who informed Mr. Barber of the arrest and impending extradition.

15. On November 18, 2011, Plaintiff held a three-way telephone conversation with his mother and Ms. Chaya Dowtin, WMATA Assistant Superintendent. Plaintiff told Ms. Dowtin about the traffic stop and incarceration stating that he did not understand why he had been arrested for allegedly driving on a suspended or revoked license when he held a valid District of Columbia license and no suspensions or revocations appeared on his driving record as of September 22, 2011.

16. In accordance with WMATA's Attendance Reporting Procedure (ARP), employees are assessed points for each day recorded as Absent Without Official Leave (AWOL). Plaintiff was assessed fifty-six (56) points for the period November 7-18, 2011

17. On December 1, 2011, WMATA issued Plaintiff a termination letter for: (1) failing to return to work on November 7, 2011 as a result of his incarceration; (2) failing to notify management about the incarceration until November 18, 2011; (3) being AWOL November 7-18, 2011; and (4) violating specific provisions of the Rules and Regulations and Policy Instructions of WMATA.

18. Subsequently, Plaintiff filed for unemployment insurance and was initially denied due to gross misconduct. However, on January 11, 2012 and January 18, 2012, the District of

Columbia Department of Motor Vehicles (DMV) and the Maryland Motor Vehicle
Administration (MVA) issued a clearance letter and certified copy of driver eligibility,
respectively, demonstrating that Plaintiff had a valid license and that his driving record
was clear of any revocations or suspensions.

19.   Moreover, on January 24, 2012, the Commonwealth of Virginia issued a *Nolle Prosequi*
Order dismissing Plaintiff's case, which was found to be a case of mistaken identity. As a
result, on June 11, 2012, an administrative law judge issued an order reversing the initial
determination and finding that Plaintiff was qualified to receive unemployment
compensation.

20.   Additionally, Plaintiff contacted the Amalgamated Transit Union, Local 689 (hereinafter
"Union" or "the Union") of which he was a member. Plaintiff sought assistance and
worked with different Union representatives to obtain reinstatement of his employment.

21.   Ultimately, on January 14, 2013, Plaintiff filed a grievance through the Union citing the
November 2011 incident as a case of mistaken identity and requesting reinstatement to
his former position.   Resultantly, Defendant WMATA agreed to consider Plaintiff for a
return to duty upon his completion of a background screening.

22.   However, on February 20, 2013, Plaintiff received a letter from WMATA informing him
that his background screening produced "adverse information" "that may or may not
impact [his] continued eligibility for employment with Metro."

23.   Plaintiff disputed the findings of the background screening and the parties, along with
the Union, brought the matter before an arbitrator. At the conclusion of arbitration,
Defendant WMATA agreed to a conditional reinstatement of Plaintiff to his prior
position.

24.   On December 9, 2013, the Union and WMATA entered into a Settlement Agreement
(the "Agreement") with Plaintiff.   Plaintiff's reinstatement was contingent upon his
successful completion of conditions explicitly stated in the Agreement, which included:

a.   A Return-to-Duty Physical, which included "drug and alcohol screening and all
[WMATA] training requirements[;]"

b. Immediate notification to WMATA "of any arrest, conviction, change in license status between the date of completion of the background check and the first day of work;" and

c. Submission to WMATA of a copy of Plaintiff's current address and phone number and "current, valid Commercial Driver's License and current driving record from [the] licensing jurisdiction showing the absence of suspensions or new moving violations since March 2013."

By the date of the Agreement, Plaintiff had already successfully completed the required background screening. *See* Exhibit 1.

25. In 2009, Plaintiff was diagnosed with sleep apnea.   Plaintiff uses a CPAP (Continuous Positive Airway Pressure) or sleep machine that regulates and monitors breathing and helps individuals breathe more easily while sleeping.  The machine's monitoring device must be removed and read by an authorized entity or individual to evaluate an individual's response to the CPAP therapy.  The cost of the machine, machine supplies and accessories, and generation of the therapy report may be covered by one's medical insurance.

26. When Plaintiff lost his employment in 2011, he also lost his medical insurance coverage with Kaiser Permanente. Plaintiff's CPAP machine is a registered Kaiser Sleep Machine. Although not explicitly stated in the Agreement, as a component of the Return-to-Duty Physical, Plaintiff was required to obtain CPAP therapy reports as a condition of reinstatement.  Plaintiff took his machine to his Kaiser Permanente physician, but was informed that, due to his lack of insurance coverage, the office would not generate the report unless Plaintiff paid for the service out of pocket.

27. Plaintiff discussed his dilemma with his girlfriend.  Without Plaintiff's knowledge or consent, his girlfriend took Plaintiff's monitoring device for machine serial number 20091270048 to Sleep Services of America, Inc. ("Center").  Without informing the Center that the monitoring device belonged to Plaintiff, the girlfriend dropped it off for report generation of Plaintiff's sleep pattern since he was unable to get it read without Kaiser Permanente insurance.   Upon receipt of the report, the girlfriend gave it to Plaintiff.

28. Concerned about the generation of his girlfriend's name and date of birth on the report, Plaintiff went to the Center to discuss his results and what happened with his treating physician. Physician support staff, however, informed Plaintiff that his physician was unavailable. During the conversation, the staff member requested to see the report. Plaintiff was reluctant to show it to her because he had not yet had a chance to give an explanation to anyone about what happened. Plaintiff reluctantly showed the report and thought that after reviewing it he would receive it back. Upon seeing where Plaintiff had blacked out his girlfriend's name and date of birth and handwritten his name, employee number, and date of birth, the staff member refused to return the report and told Plaintiff that it would have to be submitted to his employer.

29. Plaintiff requested to speak with the physician so he could explain that the CPAP machine was his and the report generated reflected his sleep pattern. The only reason the girlfriend's name was on the report was because she was the one that dropped it off at Kaiser Permanente to be generate the report. Plaintiff also had copies of other CPAP reports to show that the generated report was a representation of his sleep pattern and that the physician could compare the reports which would support Plaintiff's argument that the recent generated report belonged to him.

30. On December 18, 2013, Rosaline Myers of WMATA requested Plaintiff's latest CPAP report from the Center. Dan Camp, Respiratory Care Practitioner at the Center, responded by explaining that he had spoken to the girlfriend who left the monitoring device for reading.

31. On December 23, 2013, Lynda Jackson, WMATA Senior Labor Relations Officer, sent a letter to Gerry Garnett, Assistant Business Agent for the Union, informing him that Plaintiff allegedly "presented fraudulent/falsified medical documentation relative to the required CPAP compliance report". WMATA viewed this alleged action as Plaintiff's failure to meet the Return-to-Duty criteria and ceased all reinstatement efforts and processes. *See* Exhibit 2.

32. Plaintiff, eager to clear the misunderstanding and show his compliance, returned to the center with two additional sleep ratings showing that the monitoring device belonged to

him. He also consulted with the Union again to determine how the matter could be resolved.

33.   Nonetheless, WMATA rescinded Plaintiff's reinstatement without conducting an investigation or contacting Plaintiff to obtain an explanation about the sequence of events. For this reason and the reasons stated below, Plaintiff brings this suit against WMATA.

### CAUSES OF ACTION

### COUNT 1 - VIOLATION OF CONSTITUTIONAL DUE PROCESS
### U.S. Const. amend V

34.   Plaintiff re-alleges and incorporates by reference the allegations contained in the above-referenced paragraphs of this Complaint.

35.   The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. V.

36.   In order to establish a Fifth Amendment deprivation of property claim based on termination from employment, a plaintiff must demonstrate: (1) that he has a property interest in continued employment and (2) that he was deprived of the process he was due. Due process requires a notice and some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment. The opportunity for a hearing must offer an opportunity to present reasons, either in person or in writing why the proposed action should not be taken. *Solomon v. Office of Architect of Capitol*, 539 F.Supp.2d 347, 350 (D.D.C. 2008).

37.   First, Plaintiff had a property interest in his employment. Since Plaintiff was not an at-will employee, he could only be terminated for good and sufficient cause. *Ferguson v. Local 689, Amalgamated Transit Union, et al.*, Civ. Action No. 08-1030 (JDB), 11 (D.D.C. 2010); *See also Dove v. Washington Metropolitan Area Transit Authority*, 402 F.Supp.2d 91, 96 (D.D. C. 2005) (Employee has right to be discharged only for a reasonable, and verifiable reason.); *Compare Mills v. District of Columbia Dept. of Mental Health Saint Elizabeths Hosp. Managers*, 756 F.Supp.2d 55 (D.D.C. 2010) (As a

general rule, an at-will employee may be discharged for any or no reason at all, and hence have no protected property interest triggering due process concerns).

38.  Plaintiff was employed by Defendant for almost four years before he was unlawfully terminated for gross misconduct, specifically, being absent from work and acquiring criminal charges. As previously mentioned, Plaintiff was wrongfully arrested and detained. The District of Columbia DMV, Maryland MVA, and the State of Virginia subsequently cleared Plaintiff's records and/or dismissed all criminal charges.

39.  In addition, the District of Columbia Office of Administrative Hearings, after reviewing the matter in its entirety, determined that there was no misconduct on the part of the Plaintiff, where he was wrongfully arrested and detained; and, as a result, he was entitled to state benefits. Accordingly, Plaintiff had a right to continued employment, which Defendant agreed to reinstate, and there was no sufficient cause such that Plaintiff's employment should not have ever been terminated.

40.  Second, Plaintiff was not afforded the process he was due. He was deprived of reinstatement of his employment without notice or a hearing. *See* U.S. Const. amend. V. Defendant violated Plaintiff's constitutional due process rights when it failed to conduct an official investigation, give notice, or afford Plaintiff an opportunity to be heard.

41.  Upon learning about the generation of the CPAP report bearing Plaintiff's girlfriend's name and date of birth, Defendant had a duty to thoroughly investigate the matter to obtain the facts.   Defendant failed to do so.

42.  Defendant also had a duty to give Plaintiff a notice of its proposed rescission of reinstatement. Defendant failed to do so.

43.  In addition, Defendant was obligated to provide Plaintiff an opportunity to contest the decision to rescind his reinstatement of employment. However, rather than speaking with the Plaintiff to obtain an explanation, Defendant solely relied on the CPAP report on its face and immediately halted reinstatement efforts and processes.

44.  Plaintiff has always stated that his intention was to discuss the CPAP report with WMATA prior to agreeing to officially submit the document to explain how his girlfriend's information appeared on the report.  Plaintiff did not want to be placed in a

position of being required to submit the report without an explanation.  However, that is exactly what occurred.

45.   Therefore, Defendant's failure to conduct an investigation, provide notice, and afford Plaintiff an opportunity to be heard on the matter, prior to deprivation of his employment interests, constitutes a violation of Plaintiff's constitutional due process rights.

46.   Defendant's violation of Plaintiff's constitutional rights establishes a cause of action for monetary relief.

47.   Plaintiff has suffered actual damages because of this breach including, emotional distress, lost wages, loss of health insurance, medical costs, loss of retirement benefits, and the cost of securing new employment.

## COUNT II - BREACH OF CONTRACT OF COLLECTIVE BARGAINING AGREEMENT

48.   Plaintiff re-alleges and incorporates by reference the allegations contained in the above-referenced paragraphs of this Complaint.

49.   Defendant and the Union are parties to a negotiated contract, which is the Collective Bargaining Agreement (the "CBA").

50.   Under Section 104(d) of the CBA, negotiated by WMATA and Local 689, WMATA is required to have 'sufficient cause' to 'discharge, suspend, or otherwise discipline' a covered employee." *Ferguson v. Local 689, Amalgamated Transit Union, et al.*, Civ. Action No. 08-1030 (JDB), 11 (D.D.C. 2010).  *See also Dove v. Washington Metropolitan Area Transit Authority*, 402 F.Supp.2d 91, 96 (D.D. C. 2005) (Employee has a right to be discharged only for a reasonable and verifiable reason.).

51.   Defendant falsely accuses Plaintiff of presentation of "fraudulent/falsified medical documentation relative to the required CPAP compliance report."  Exhibit 2.

52.   "Falsification involves an affirmative misrepresentation and requires intent to deceive." *Ludlum v. Dep't of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002), *citing Naekel v. Dep't of Transp.*, 782 F.2d 975, 977 (Fed. Cir. 1986).

53.  Specifically, fraudulent misrepresentation requires: (1) a false representation; (2) in
reference to a material fact; (3) made with knowledge of its falsity; (4) with the intent to
deceive; and (5) action taken…in reliance upon the representation, (6) which
consequently resulted in provable damages. *Berlin v. Bank of America, N.A.* at 25
(D.D.C., 2015) (quoting *Kumar v. District of Columbia Water & Sewer* Authority, 25
A.3d 9, 15 n.9 [D.C. 2011]).

54.  Plaintiff was concerned about turning in a CPAP report with his girlfriend's information
on it.  He did not intend to turn the document in before first being given an opportunity
for an explanation.

55.  However, the Center support staff forced Plaintiff to submit the report without an
explanation and Defendant relied solely on it to halt all reinstatement efforts.  Plaintiff
did not misrepresent the information contained in the report nor did he possess the
requisite intent to deceive the Defendant.  Had the Defendant conducted an investigation,
Defendant would have obtained an explanation about what occurred.

56.  Further, submission of incorrect information does not "control the question of intent" to
deceive. *Dennis v. Health & Human Svcs,* 804 F.2d 670, 673 (Fed. Cir. 1986), *citing
Naekel* at 978.  Direct and circumstantial evidence must prove intent; a mere mistake
does not constitute reckless disregard for the truth.  *See Haebe v. Dep't of Justice,* 288
F.3d 1288, 1305 (2002), *citing Naekel* at 976-82.

57.  In *Naekel*, the Federal Aviation Administration discharged Mr. Naekel for alleged
submission, on two occasions, of false information related to his employment application.
*See Haebe* at 1306, *citing Naekel* at 976-77.   The Court found that neither direct nor
circumstantial evidence satisfied the intent prong. *See id.* at 1309, *citing Naekel* at 978-
79. *See also Bowman-Cook v. Washington Metropolitan Area Transit Authority*, 16 A.3d
130 (D.C. 2011) (Employee's failure to accept employer's certified mail, merely due  to
her request that communications be ceased, could not be said to be intentional, as
necessary to constitute misconduct.).

58.  Plaintiff's direct evidence of his consistent statement that he wanted to explain to the
physician how the girlfriend's name was on the generated report as well as the two
additional CPAP generated reports showing that the sleep patterns were based on his

personal physical assessment from his machine demonstrate that he did not possess the requisite intent to deceive the Defendant. Defendant erred in drawing such an inference from the circumstantial evidence of the document alone. *See also Freeman v. U.S. Postal Service*, Fed. Appx. 934, 937 (Fed. Cir. 2005) (Intent cannot be inferred from falsity of information alone.).

59.   Even if Plaintiff had submitted the document without providing an explanation, such a mistake does not satisfy the requisite intent prong. Therefore, Defendant breached the CBA when it discharged Plaintiff without sufficient cause.

60.   Defendant's breach of their contractual obligations establishes a cause of action for monetary relief.

61.   Plaintiff has suffered actual damages because of this breach including, emotional distress, lost wages, loss of health insurance, medical costs, loss of retirement benefits, and the cost of securing new employment.

## COUNT III - BREACH OF CONTRACT OF SETTLEMENT AGREEMENT

62.   Plaintiff re-alleges and incorporates by reference the allegations contained in the above-referenced paragraphs of this Complaint.

63.   Pursuant to the Agreement, Defendant was required to reinstate Plaintiff's employment upon him providing his updated residential and contact information, his successful completion of a drug and alcohol screening, criminal background screening, and licensure validation screening. *See* Exhibit 1.

64.   Plaintiff completed the conditions stated in paragraphs one, two, three, and ten of the Agreement. Thus, he satisfied this and the other conditions precedent required for reinstatement. In addition, he successfully completed the physical and submitted accurate, timely CPAP reports as requested by Defendant.

65.   In light of Plaintiff's successful completion of all required conditions precedent, Defendant materially breached its contractual duty to Plaintiff when it failed to fulfill its obligation to reinstate Plaintiff in accordance with the terms of the Agreement.

66. As previously noted, the Agreement does not explicitly require Plaintiff to obtain CPAP therapy reports as a condition of reinstatement. Nevertheless, Defendants made this request as part of their "physical" requirement and Plaintiff acquiesced.

67. Moreover, there is no indication that Plaintiff knowingly provided fraudulent or falsified CPAP reports. Fraud requires intent to deceive. Plaintiff, however, voluntarily raised an issue with his reports prior to them being submitted to his employer. Hence, Defendants failure to reinstate is a breach of the Agreement.

68. Defendant's breach of their contractual obligations establishes a cause of action for monetary relief.

69. Plaintiff has suffered actual damages because of this breach including, emotional distress, lost wages, loss of health insurance, medical costs, loss of retirement benefits, and the cost of securing new employment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter Judgment against Defendant and:

A. Declare that the Defendant unlawfully terminated Plaintiff's employment under U.S. Const. amend V;

B. Declare that the Defendant failed to lawfully reinstate Plaintiff's employment under U.S. Const. amend V;

C. Enjoin Defendant from engaging in the unlawful practices set forth herein;

D. Order that Defendant immediately reinstate Plaintiff to his former position as full-time Bus Operator with WMATA;

E. Order that Defendant make written correction in Plaintiff's official personnel file and all supplemental files, signed by WMATA senior-level managers or directors, that Plaintiff did not commit fraud or falsification of documentation against Defendant;

F. Award Plaintiff actual, consequential, and incidental damages in an amount to be determined at trial for back pay and lost wages, benefits to include health and life

insurance, employer retirement fund contributions, reimbursement for job search-related expenses, and emotional distress;

G. Award Plaintiff punitive damages in an amount to be determined at trial for emotional distress;

H. Award Plaintiff reasonable attorney's fees and costs;

I. Award Plaintiff pre-judgment and post-judgment interests, as provided by law; and

J. Grant any other such legal and equitable relief as may be deemed fair and just by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all triable issues raised in this Complaint.

Respectfully submitted,

By _Michelle Bell_

Michelle Bell, Esq.
Bar #1004694
MC Bell Law Firm, PLLC
888 16th Street, NW, Suite 800
Washington, DC 20006
(240) 230-3633 office
(202) 905-0105 fax
mbell@mcblawpllc.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

 I, Michelle Bell, HEREBY CERTIFY on this 18th day of May 2015, that I have caused the foregoing COMPLAINT to be served upon the recipient listed below via certified mail at the following address:


Carol B. O'Keeffe
General Counsel
Washington Metropolitan Area Transit Authority
600 Fifth Street, NW
Washington, DC 20001


Michelle Bell, Esq.