# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ANTONIO ROBINSON,

       Plaintiff,

       v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

       Defendant.

Civil Action No. 15-740 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiff, Antonio Robinson, brings this suit against his former employer, the Washington Metropolitan Area Transit Authority ("WMATA" or "the defendant"), alleging constitutional and contractual injuries arising from WMATA's decision not to restore the plaintiff to his position as a Bus Operator following his termination in December 2011. Contending that the defendant wrongfully withdrew its conditional commitment to reinstate the plaintiff without adequate process, the plaintiff claims that WMATA violated both the collective bargaining agreement ("CBA") between WMATA and the plaintiff's union and a separate settlement agreement between WMATA and the union arising under the CBA, as well as the Due Process Clause of the Fifth Amendment to the U.S. Constitution. Compl., ECF No. 1. Pending before the Court is the defendant's motion to dismiss the plaintiff's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim for which relief can be granted. Def. WMATA's Fed. R. Civ. P. 12(b)(6) Mot. Dismiss ("Def.'s Mot."), ECF No. 5. For the reasons explained below, the defendant's motion is granted.

## I.     BACKGROUND

The plaintiff was hired by WMATA as a Bus Operator in May 2008, and served in that position until December 2011.  Compl. ¶¶ 7–9, 17.  On November 7, 2011, while returning from his lunch break, the plaintiff was stopped by police in Maryland and arrested for allegedly driving with a suspended, out-of-state license.  *Id.* ¶ 9.  After the plaintiff was taken into custody, he was served with an arrest warrant issued by the Commonwealth of Virginia.  *Id.* ¶ 10.  The Complaint does not indicate the charge or charges for which this warrant was issued, but the plaintiff ultimately remained in the custody of the Prince George's County police for nearly two weeks before being extradited to Virginia, where he remained in custody for an additional two weeks.  *Id.* ¶¶ 10, 12.

The plaintiff alleges that he contacted WMATA on an unspecified date while in custody and left a voicemail message with an office manager, informing her of his delayed return to duty as a result of his arrest.  *Id.* ¶ 11.  Subsequently, while the plaintiff remained in custody, his mother twice communicated by telephone with WMATA, first on November 16, 2011, and again on November 18, 2011.  *Id.* ¶¶ 14–15.  During these conversations, the plaintiff's mother informed WMATA management of the plaintiff's arrest and impending extradition, as well as the plaintiff's confusion regarding the reason for his arrest and basis for his continued detention. *Id.*  These communications notwithstanding, on December 1, 2011, WMATA terminated the plaintiff due to: (1) his failure to return to work on November 7, 2011; (2) his failure to notify WMATA of his incarceration until November 18, 2011; (3) the resulting period during which the plaintiff was Absent Without Official Leave; and (4) the plaintiff's violation of unspecified WMATA rules and regulations.  *Id.* ¶ 17.

After he was terminated, the plaintiff alleges that the source of his confusion regarding his arrest became clear.  On January 11, 2012, and January 18, 2012, the District of Columbia Department of Motor Vehicles and Maryland Motor Vehicle Administration issued, respectively, a clearance letter and certified copy of driver eligibility demonstrating that the plaintiff had a valid license and that his driving record was clear of any revocations or suspensions.  *Id.* ¶ 18. Likewise, on January 24, 2012, the Commonwealth of Virginia dismissed the pending charges against the plaintiff after concluding that he was arrested and held based on a mistaken identity. *Id.* ¶ 19.

Nearly a year later, on January 14, 2013, the plaintiff filed a grievance through Amalgamated Transit Union, Local 689 ("the Union"), contending that his arrest in November 2011 was due to his misidentification and requesting reinstatement to his prior position as a WMATA Bus Operator.  *Id.* ¶ 21.  After WMATA identified potential adverse information arising out of a background screening linked to the plaintiff's requested reinstatement, which the plaintiff disputed, WMATA and the Union entered into a Settlement Agreement ("the Settlement Agreement") under which the plaintiff would be reinstated upon meeting certain conditions.  *Id.* ¶¶ 22–24.  Under the terms of this agreement, any "future dispute arising from the interpretation or implementation of the [Settlement Agreement would be] outside of the initial grievance and must be grieved separately under the terms and conditions of Section 104 of the Collective Bargaining Agreement."  Compl., Ex. 1 ("Settlement Agreement") at 2, ECF No. 1-1.

Among the conditions imposed on his reinstatement, the plaintiff was required to complete a Return-to-Duty Physical.  Compl. ¶ 24.a.  Although not explicitly stated in the Settlement Agreement, as an element of this physical, the plaintiff was required to obtain reports from a device, called a Continuous Positive Airway Pressure ("CPAP") machine, the plaintiff

used to treat his sleep apnea. *Id.* ¶¶ 25–26. Unfortunately, because the plaintiff lost his medical insurance coverage following his termination in late 2011, he was unable to obtain a sleep report from his own physician without paying out-of-pocket to generate the report. *Id.* ¶ 26. As a result, at some point in December 2013, unbeknownst to the plaintiff, his girlfriend obtained a report from the plaintiff's CPAP machine through a separate provider. *Id.* ¶ 27. This report included the plaintiff's girlfriend's name and date of birth, which the plaintiff later blacked-out and replaced, by hand, with his own name, employee number, and date of birth. *Id.* ¶ 28. According to the plaintiff, concerned that the report may be confusing, he visited the provider that generated the report "to discuss his results and what happened with his treating physician." *Id.* Unfortunately, the plaintiff's physician was unavailable and, upon recognizing that the report had been altered, a staff member of the provider refused to return the report to the plaintiff and informed the plaintiff that she would be required to submit the report to WMATA. *Id.*

On December 23, 2013, after learning of the altered report, WMATA informed the Union that the plaintiff "presented fraudulent/falsified medical documentation relative to the required CPAP compliance report." *Id.* ¶¶ 30–31. Consequently, WMATA concluded that the plaintiff failed to complete the required Return-to-Duty Physical required by the Settlement Agreement and separately violated WMATA policies by falsifying the CPAP report. *Id.* ¶ 31; Compl., Ex. 2 ("Dec. 23, 2013 Letter Re: Settlement Agreement"), ECF No. 1-1. Accordingly, WMATA informed the Union that "[a]ll efforts and processes started on behalf of [the plaintiff] to ensure his timely reinstatement" were ceased. Compl., Ex. 2. Thereafter, the plaintiff attempted to provide additional evidence demonstrating that the altered CPAP report was in fact a reflection of his own sleep pattern, Compl. ¶ 32, and spoke with Union representations regarding how best

to proceed, *id.* Following these discussions, however, the plaintiff apparently did not pursue any formal grievance challenging WMATA's decision to rescind his reinstatement.

Instead, nearly eighteen months later, the plaintiff filed the instant action on May 18, 2015. Alleging that WMATA rescinded his proposed reinstatement "without conducting an investigation or contacting [the plaintiff] to obtain an explanation about the sequence of events," the plaintiff asserts that this decision violated: (1) the plaintiff's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution ("Count I"), *id.* ¶¶ 34–47; (2) the plaintiff's for-cause termination protection under § 104(d) of the CBA between WMATA and the Union ("Count II"), *id.* ¶¶ 48–61; and, (3) the terms of the Settlement Agreement governing the plaintiff's conditional reinstatement ("Count III"), *id.* ¶¶ 62–69. On July 13, 2015, the defendant moved, pursuant to Federal Rule Civil Procedure 12(b)(6), to dismiss the Complaint in its entirety, Def.'s Mot., and this motion is now ripe for consideration.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to encourage brevity and, at the same time, "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipses in original; internal quotations and citations omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). The Supreme Court has cautioned that although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Wood v. Moss*, —— U.S. ——, 134 S.Ct. 2056, 2067 (2014) (quoting *Iqbal*, 556 U.S. at 678). A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability," but allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556–57); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action" to provide "grounds" of "entitle[ment] to relief," *Twombly*, 550 U.S. at 555 (alteration in original), and "nudge[] [the] claims across the line from conceivable to plausible," *id*. at 570. Thus, "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (second alteration in the original).

In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, even if doubtful in fact. *Twombly*, 550 U.S. at 555; *Harris v. D.C. Water and Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (in considering Rule 12(b)(6) motion, the "court must accept as true all of the allegations contained in a complaint" and "draw the reasonable inference" therefrom "that the defendant is liable for the misconduct alleged," but that tenet "is inapplicable to legal conclusions," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (internal quotations and citations omitted)).

## III.    DISCUSSION

In the present motion, WMATA asserts alternative grounds for dismissing each of the plaintiff's claims.  First, WMATA argues that the plaintiff failed to file his claim within the six-month limitations period set out under § 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160, and asserts that the Complaint must be dismissed entirely as untimely filed. Def.'s Mem. Supp. Def.'s Mot. ("Def.'s Mem.") at 3–5.  Alternatively, WMATA asserts separate grounds for dismissing each count of the Complaint.  Specifically, WMATA contends that the plaintiff's constitutional claim should be dismissed because the plaintiff failed to take advantage of the comprehensive grievance procedure outlined in the CBA between WMATA and the Union and, therefore, has failed to allege sufficient facts to demonstrate that WMATA's decision to rescind the plaintiff's reinstatement constituted a violation of the Due Process Clause.  *Id.* at 5–7. Further, WMATA argues that the plaintiff's breach-of-contract claims must be dismissed because the plaintiff, having failed to pursue the available grievance procedures provided under the CBA to resolve his claims, *id.* at 8–10, alleges no breach of the Union's duty of fair representation sufficient to excuse this failure to exhaust his available remedies, *id.* at 7–8.

Following a brief summary of the legal principles governing an individual employee's challenge to an employer's conduct under a CBA, each of these arguments are addressed in turn below.

### A.    Legal Principles Governing Individual Employee Challenges Under a Collective Bargaining Agreement

The Supreme Court has long recognized that an "individual employee may bring suit against his employer for breach of a collective bargaining agreement." *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 163 (1983) (citing *Smith v. Evening News Assn.,* 371 U.S. 195 (1962)).  In general, however, because the resolution of such a suit requires interpretation of the

CBA, claims alleging breach of a CBA are governed by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.[1]  *See DelCostello,* 462 U.S. at 162–63; *see also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988) ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles-necessarily uniform throughout the Nation-must be employed to resolve the dispute."); *Cephas v. MVM, Inc.*, 520 F.3d 480, 484 (D.C. Cir. 2008) ("Section 301 completely preempts any action predicated upon state law if that action 'depends upon the meaning of a collective-bargaining agreement.'" (quoting *Lingle*, 486 U.S. at 405–06)).  Under § 301, an employee alleging a breach of a CBA is ordinarily "required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement" before brining suit in federal court.  *DelCostello*, 462 U.S. at 163 (citing *Republic Steel Corp. v. Maddox,* 379 U.S. 650 (1965)).  Thereafter, "[s]ubject to very limited judicial review, [the employee] will be bound by the result according to the finality provisions of the [CBA]."  *Id.* at 164 (citing authorities).

This general exhaustion requirement notwithstanding, however, the Supreme Court has identified certain circumstances in which an employee may file a breach-of-CBA claim without first seeking relief under the resolution processes outlined in the governing CBA.  Specifically, an employee need not exhaust a claim under § 301 where his or her employer has effectively repudiated the grievance procedures outlined under the relevant CBA.  *See Vaca v. Sipes*, 386 U.S. 171, 185 (1967) ("An obvious situation in which the employee should not be limited to the

[1]     This section provides, in relevant part: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  29 U.S.C. § 185(a).

exclusive remedial procedures established by the [CBA] occurs when the conduct of the employer amounts to a repudiation of those contractual procedures."). Likewise, an employee need not exhaust grievance procedures outlined under a CBA where the employee alleges *both* that his or her employer has breached the terms of the CBA *and* that the "union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello*, 462 U.S. at 164. "In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." *Id.* (citing authorities). Often described as a "hybrid" claim, such a suit comprises two separate causes of action—one against the employer under § 301 for breach of the CBA, and the second against the union for breach of its duty to fairly represent its members—that are "inextricably interdependent." *Id.* at 164–65 (internal quotations omitted) (quoting *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 64 (1981)). Thus, "[t]o prevail against either the company or the [u]nion, . . . employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the [u]nion." *Id.* at 165 (internal quotations and alterations omitted) (quoting *Mitchell*, 451 U.S. at 66–67).

Much as the nature of an employee's allegations dictates the degree to which the employee must exhaust his or her claim prior to filing an action in federal court, the plaintiff's allegations have substantial bearing on the limitations period applicable to the employee's claim. On one hand, the statute of limitations applicable to a straightforward breach of contract suit under § 301 must "be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW), AFL-CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696, 701–05 (1966). In the District of

Columbia, the three-year statute of limitations for a breach-of-contract action, D.C. Code § 12-301, applies to such claims.  *Cephas*, 520 F.3d at 482–83.  By contrast, while not subject to the general exhaustion requirement under § 301, a hybrid breach-of-CBA/breach-of-duty of fair representation claim is subject to the shorter, six-month statute of limitations applicable to claims arising under the LMRA.  *DelCostello*, 462 U.S. at 163–72.  Thus, an employee alleging both a breach of a CBA and a concomitant breach of his or her union's duty to fairly represent its members need not exhaust his or her claim before bringing suit, but the employee must file his or her claim more quickly that would otherwise be necessary under District of Columbia law.

Set against this background, WMATA's alternative grounds for dismissing each of the plaintiff's claims are considered *seriatim*.

### B.    The Plaintiff's Claims are Not Barred by the Six-Month Limitations Period Set Out in the LMRA

As an initial matter, WMATA argues that, because the plaintiff filed this action nearly a year and a half after WMATA rescinded his reinstatement, each of the plaintiff's claims are barred under the six-month statute of limitations period under §10(b) of the NLRA and, therefore, must be dismissed as untimely.

Specifically, WMATA suggests, without explanation or support, that each of the plaintiff's claims are, "in essence, a classic claim of a breach of the CBA/breach of duty of fair representation case, which should have been filed well before May 18, 2015."  Def.'s Mem. at 3. The plaintiff resists this characterization and argues instead that his claims are properly understood as arising not out of a breach of the CBA, but instead as a breach of the Settlement Agreement between WMATA and the Union.  Pl.'s Mem. Opp'n WMATA's Mot. Dismiss ("Pl.'s Opp'n") ¶¶ 27–28, ECF No. 6.  Thus, according to the plaintiff, his claims are properly understood as arising under a general provision of the WMATA Compact providing a right of

10

action for parties alleging breach of contract by WMATA. *Id.* ¶ 27 (citing D.C. Code §9-1107.01(80)).  So construed, the plaintiff argues, his claims are not governed by the six-month limitations period applied to hybrid claims under §10(b) of the NLRA. *Id.* ¶¶ 27–28.

To determine which limitations period applies to the plaintiff's claims, the Court must first determine whether the plaintiff's allegations against WMATA in fact constitute a hybrid breach-of-contract/breach-of-duty of fair representation claim against WMATA and the Union. Arguing that the six-month limitations period applies, the defendant points to two non-binding decisions addressing claims of former WMATA employees challenging the circumstances of their termination.  Importantly, however, the plaintiff in each of these cases expressly alleged *both* that WMATA breached the CBA in terminating them *and* that the Union failed to fairly represent them in connection with their resulting grievance under the CBA. *See Dove v. Wash. Metro. Area Transit Auth.*, 402 F. Supp. 2d 91, 94–95 (D.D.C. 2005), *aff'd*, No. 05-7118, 2006 WL 7136123 (D.C. Cir. Mar. 13, 2006) (explaining that the plaintiff alleged "conspiracy, breach of contract, and false representation by Local 689" and, even after voluntarily dismissing his claims against the Union, did not dispute the applicability of the §10(b) limitations period); *Price v. Wash. Metro. Area Transit Auth.*, 41 A.3d 526, 528 (D.C. 2012) (dismissing, as untimely, a wrongful discharge claim brought by a former WMATA employee who also alleged that the Union "arbitrarily refused to take his grievance against WMATA to arbitration"); *see also Lewis v. Wash. Metro. Area Transit Auth.*, No. 8:11-CV-00997-AW, 2013 WL 3322292, at *4 (D. Md. June 28, 2013) (describing as "hallmarks of a hybrid action" allegations "sounding [both] in breach of contract and breach of the duty of fair representation").  As a result, consistent with the Supreme Court's holding in *DelCostello*, 462 U.S. at 172, each of these claims was governed by

the six-month limitations period provided under § 10(b).  *Dove*, 402 F. Supp. 2d at 96–97; *Price*, 41 A.3d at 532–33; *Lewis*, 2013 WL 3322292, at *4.

Here, by contrast, the plaintiff makes no allegation that the Union failed to represent the plaintiff fairly in connection with WMATA's decision not to rehire the plaintiff.  Instead, the Complaint indicates only that, following the rescission of his reinstatement, the plaintiff "consulted with the Union again to determine how the matter could be resolved."  Compl. ¶ 32.  As WMATA itself notes, Def.'s Mem. at 7, the defendant alleges nothing further to suggest that the Union thereafter declined, fairly or unfairly, to pursue a grievance, *see generally* Compl.  Moreover, to the extent that the Complaint itself leaves any lingering ambiguity, in response to the defendant's present motion, the plaintiff expressly disavows any claim that the Union failed to represent him fairly under the CBA.  Pl.'s Opp'n ¶ 43 ("Alleging facts against Local 689 is outside the scope of the Complaint.").  Given that the plaintiff has consistently declined to allege *any* wrongdoing by the Union, WMATA's efforts to cast this action as a hybrid claim against WMATA and the Union are clearly misplaced.  Instead, the plaintiff's allegations are best understood as pure breach-of-contract and due process claims against his former employer.

Since the plaintiff alleges no breach of his Union's duty of fair representation, the general three-year statute of limitations applicable under District of Columbia law applies to the plaintiff's breach-of-contract claims.[2]  Since the plaintiff filed this action well within three years of WMATA's decision to rescind his reinstatement, the defendant's motion to dismiss the plaintiff's complaint as untimely under the six-month limitations period set out in §10(b) of the

---

[2]        The parties do not indicate what limitations period would otherwise apply to the plaintiff's claim arising under the Due Process Clause of the Fifth Amendment.  *See generally* Def.'s Mem.; Pl.'s Opp'n.  The plaintiff does not explicitly style this claim as an action under 42 U.S.C. § 1983, but, so construed, the limitations period applicable to such an action in the District of Columbia is also three years.  *Earle v. District of Columbia*, 707 F.3d 299, 305 (D.C. Cir. 2012) (citing *Singletary v. District of Columbia,* 351 F.3d 519, 529 n.11 (D.C. Cir. 2003)).

NLRA is denied.  Accordingly, to resolve the present motion, the allegations supporting each of the plaintiff's individual claims are examined to determine whether the plaintiff has stated a claim for which this Court may grant relief.

### C.    The Plaintiff Fails to Plead Sufficient Facts to Allege a Due Process Violation

Turning first to the plaintiff's constitutional claim, the plaintiff contends that WMATA deprived him of due process by ceasing efforts to reinstate him following his submission of an altered CPAP report.  As discussed below, set against the legal framework applicable to the plaintiff's due process claim, his allegations against WMATA are insufficient to support this claim.

### 1.    *Legal Principles Governing Procedural Due Process Claims*

The procedural component of the Due Process Clause is intended to "impose[] constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976).  Three basic elements are required for a procedural due process claim: (1) deprivation by the government; (2) of life, liberty, or property; (3) without due process of law.  *Lightfoot v. District of Columbia,* 273 F.R.D. 314, 319 (D.D.C. 2011) (citing *Propert v. District of Columbia,* 948 F.2d 1327, 1331 (D.C. Cir. 1991)).

Assessment of procedural due process claims proceeds by determining, first, whether the plaintiff was deprived a liberty or property interest by the government.  *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  To establish a protected liberty or property interest, the plaintiff must demonstrate that the Constitution or a federal or state statute grants him a protected right.  *Doe v. U.S. Dep't of Justice,* 753 F.2d 1092, 1124 (D.C. Cir. 1985) ("[T]he interests that are comprehended within the meaning of either liberty or property, as covered by the due process clause of the Constitution, are those interests which have 'attain[ed] constitutional status by

virtue of the fact that they have been initially recognized or protected by state law' or federal law.") (quoting *Paul v. Davis,* 424 U.S. 693, 710 (1976) (internal citations omitted)).  Thus, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

Where the plaintiff demonstrates entitlement to a constitutionally protected interest, the court must next examine "whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Thompson*, 490 U.S. at 460.  In general, due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner" when an individual is deprived of liberty or property interests.  *Mathews,* 424 U.S. at 333, 96 S.Ct. 893 (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)).  Thus, "at minimum, . . . the government [must] provide notice and some kind of hearing."  *Propert,* 948 F.2d at 1331 (discussing deprivation of property interests); *see also Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433 (1982) ("[I]t has become a truism that '*some* form of hearing' is required before the owner is finally deprived of a protected property interest.") (citation omitted) (emphasis in original); *Gray Panthers v. Schweiker,* 652 F.2d 146, 165 (D.C. Cir. 1980) (the "core requirements" of due process require "adequate notice" and "a genuine opportunity to explain.").

This requirement, however, is not "a technical conception with a fixed content unrelated to time, place and circumstances."  *Mathews,* 424 U.S. at 334 (quoting *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895 (1961)).  Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (citation omitted).  "The precise form of notice and the precise kind of hearing required depends upon a balancing of the

competing public and private interests involved." *Propert,* 948 F.2d at 1332.  Balancing of these

interests requires evaluation of the three factors identified by the Supreme Court in *Mathews v.*

*Eldridge:* "(1) the significance of the private party's protected interest, (2) the government's

interest, and (3) the risk of erroneous deprivation and the probable value, if any, of additional or

substitute procedural safeguards."  *Gen. Elec. Co. v. Jackson,* 610 F.3d 110, 117 (D.C. Cir.

2010); *Mathews,* 424 U.S. at 335.

> ## 2. *The Plaintiff Fails to Allege that He was Deprived of a Constitutionally Protected Interest Without Due Process*

Assuming as true the factual allegations set out in the Complaint, the plaintiff has failed

to allege sufficient facts to support his claim that he was denied adequate process in connection

with WMATA's decision not to reinstate him following his submission of an altered CPAP

report.

Relying on the for-cause removal protection outlined in the CBA between WMATA and

the plaintiff's union, the plaintiff alleges that he "had a property interest in his employment" by

WMATA.  Compl. ¶ 37.  In light of this asserted interest, the plaintiff contends that due process

required "a notice and some kind of hearing prior to" WMATA's decision to rescind his

reinstatement, at which hearing the plaintiff would have had "an opportunity to present reasons,

either in person or in writing why the proposed action should not be taken."  *Id.* ¶ 36 (citing

*Solomon v. Office of Architect of Capitol*, 539 F. Supp. 2d 347, 350 (D.D.C. 2008)).  In

particular, the plaintiff maintains that he was prepared to explain the apparent discrepancies in

his CPAP report and alleges that WMATA's failure "to conduct an investigation, provide notice,

[or] afford [the plaintiff] an opportunity to be heard on the matter, prior to deprivation of his

employment interests," deprived him of due process.  *Id.* ¶¶ 41–45.  In response, assuming for

purposes of the present motion that the plaintiff maintained a constitutionally protected interest

in connection with WMATA's commitment to reinstate him, the defendant argues that the comprehensive grievance process outlined under the CBA, and incorporated by reference into the Settlement Agreement, provided the plaintiff with sufficient opportunity to contest WMATA's decision to rescind his reinstatement.  Def.'s Mem. at 5–6.

At the outset, though WMATA does not contest the plaintiff's asserted interest in for-cause removal protection, the factual allegations set out in the Complaint demonstrate that any constitutionally protected interest at stake in the instant case is far narrower than the plaintiff suggests.  In fact, the plaintiff's factual allegations make clear that, during the relevant period, the plaintiff was not employed by WMATA but was instead engaged in an effort to be *reinstated* to his prior position as a Bus Operator.  *See* Compl. ¶¶ 17 (alleging that WMATA issued a termination letter to the plaintiff on December 1, 2011), 20 (indicating that the plaintiff subsequently "worked with different Union representatives to obtain reinstatement of his employment"), 21 (alleging that the plaintiff thereafter filed a grievance through the Union "requesting reinstatement to his former position"), 24 (explaining that this grievance resulted in the Settlement Agreement underlying the present dispute).  Taking the Complaint as a whole, these factual claims are at odds with the plaintiff's conclusory allegation that he "had a right to continued employment" by WMATA.  *Id.* ¶ 39.[3]  This disconnect is particularly apparent in the plaintiff's allegation that, due to his asserted interest in his continued employment, he "could only be terminated for good and sufficient cause."  *Id.* ¶ 37 (citing authorities).  Indeed, the plaintiff nowhere challenges his *termination* in December 2011.[4]  Instead, the plaintiff claims

---

[3]      The plaintiff's alleges that, in June 2012, a state administrative law judge found the plaintiff eligible for state unemployment benefits in light of the dismissal of all charges against him stemming from his November 2011 arrest.  Compl. ¶¶ 19, 39.  Again, even assuming this allegation to be true, the plaintiff's entitlement to certain state benefits in connection with his continued unemployment does nothing to suggest that the plaintiff again enjoyed the full for-cause dismissal protection previously afforded to him as a WMATA employee.
[4]      As explained below, any challenge to his termination was resolved by the Settlement Agreement, and the plaintiff is therefore precluded from renewing this earlier challenge in this Court.  *See infra* note 6.

that WMATA's decision not to *reinstate* him under the terms of the Settlement Agreement violated the Due Process Clause.  *See id.* ¶ 40 (alleging that the plaintiff "was deprived of reinstatement of his employment without notice or a hearing").

In this regard, any protected constitutional interest implicated by the plaintiff's present claim arises not from the for-cause termination protection afforded under the CBA governing his prior employment by WMATA, but must instead derive, if at all, from the subsequent agreement governing the terms of his proposed reinstatement.  Thus, to demonstrate that he was deprived of a constitutionally protected interest, the plaintiff must allege sufficient facts to show that he maintained a "'legitimate claim of entitlement' to some benefit that is protected by independent state-law rules, relevant contractual language [or] applicable . . . regulations." *Toxco, Inc. v. Chu*, 801 F. Supp. 2d 1, 9 (D.D.C. 2011) (citations omitted)).  Absent such a legitimate expectation, rescission of the plaintiff's proposed reinstatement implicates no constitutionally protected interest and cannot support a valid claim under the Due Process Clause. *See Ifill v. New York State Court Officers Ass'n*, 655 F. Supp. 2d 382, 391 (S.D.N.Y. 2009) (dismissing, for failing to state a claim, a former state employee's claim that the denial of his request to be reinstated to his prior position, where such reinstatement was purely discretionary, violated his due process rights).  The plaintiff alleges no basis for such an expectation beyond the Settlement Agreement. *See generally* Compl.  Thus, to determine whether the plaintiff has alleged sufficient facts to establish a constitutionally protected property interest, the Court must look to the terms of the Settlement Agreement governing the plaintiff's conditional reinstatement. *Cf. Clukey v. Town of Camden*, 717 F.3d 52, 57–59 (1st Cir. 2013) (finding a protected property interest where the CBA between the defendant municipality and the plaintiff's union stated that

17

laid-off employees had a right to be recalled to their former positions within a year of being laid off).

The plaintiff alleges that, under the terms of the Settlement Agreement, WMATA committed to reinstate the plaintiff "contingent upon his successful completion of conditions explicitly stated in the Agreement." Compl. ¶ 24. Thus, the only legitimate claim of expectation alleged by the plaintiff in connection with this agreement was the promise of reinstatement if, and only if, the plaintiff met the conditions outlined in the agreement. Taking this allegation as true, the plaintiff's claim that he was deprived of this interest without due process stands on uncertain ground. In fact, when WMATA ceased its efforts to reinstate the plaintiff, he had not yet met all of the conditions under which he would be entitled to reinstatement because, having not yet obtained and submitted a CPAP report demonstrating his fitness to return to duty, he had not yet completed his Return-to-Duty Physical. *Id.* ¶ 26. Given that he had not satisfied each of the conditions subsequent to his reinstatement, any legitimate expectation the plaintiff had in his reinstatement at the time WMATA chose not to rehire him is far from certain.

In any event, even assuming *arguendo* that the plaintiff has alleged sufficient facts to demonstrate that he was deprived of a cognizable property interest, his allegations make clear that he was afforded clear notice of the ample process available to him to contest WMATA's decision to cease efforts to reinstate him. In particular, by clearly incorporating the grievance procedures outlined under the CBA, the Settlement Agreement provided an opportunity for the plaintiff to challenge WMATA's determination that he knowingly submitted a falsified CPAP report. *Id.*, Ex. 1 at 2. The plaintiff does not allege that the grievance procedures outlined under the CBA failed to provide sufficient process, and alleges nothing to support an inference that these procedures may be constitutionally deficient. *See generally* Compl. Much the same, the

18

plaintiff's conclusory allegation that WMATA, upon learning of the altered report, "had a duty to thoroughly investigate the matter to obtain the facts," *id.* ¶ 41, is unavailing.  In opposing the present motion, the plaintiff points to no authority, binding or otherwise, for the proposition that due process necessitated an "official investigation" beyond that which WMATA conducted before choosing to rescind the plaintiff's reinstatement.  Pl.'s Opp'n at 10–11.

While the plaintiff claims that WMATA failed to provide him with notice of its decision to rescind his reinstatement, *id.*, the plaintiff's factual allegations belie any inference that he was deprived of adequate notice of his ability to contest this decision.  Taking the plaintiff's factual allegations as true, he received notice, on December 23, 2013, that WMATA viewed his submission of the altered CPAP report as a failure to complete the required Return-to-Duty Physical.  Compl. ¶ 31.  As a result of his apparent non-compliance with the terms of the Settlement Agreement, WMATA notified the plaintiff that efforts to prepare for his timely reinstatement would cease.  *Id.*  Having received notice of WMATA's intention not to reinstate him, the plaintiff nowhere alleges that he was unaware of his ability to challenge this decision through a new grievance.  *See generally* Compl.  Quite the opposite, the plaintiff alleges that he consulted with the Union to determine how best to resolve the burgeoning dispute, *id.* ¶ 32, which strongly suggests that the plaintiff was fully aware that the Settlement Agreement provided an avenue for the plaintiff to contest WMATA's findings regarding the altered CPAP report.  In sum, nothing in the record suggests that the plaintiff was unaware of the procedures afforded to him under the Settlement Agreement, or that he was precluded or otherwise prevented from contesting the rescission of his reinstatement through a new grievance.

"The due process inquiry does not focus on the correctness of outcomes, but rather on the adequacy of the process afforded; indeed, there is no guarantee against 'incorrect or ill-advised

personnel decisions.'" *Int'l Union, United Gov't Sec. Officers of Am. v. Clark*, 706 F. Supp. 2d

59, 70 (D.D.C. 2010) (quoting *Bishop v. Wood,* 426 U.S. 341, 350 (1976)).  Thus, even taking as

true the plaintiff's allegation that he intended to explain the apparent alterations to the CPAP

report and was prepared to offer additional evidence that he was in fact fit to return to duty,

Compl. ¶ 32, the plaintiff fails to allege sufficient facts that the process available to him under

the Settlement Agreement failed to comport with constitutional requirements.

Finally, the plaintiff's suggestion that he was entitled to notice and an opportunity to be

heard *before* any deprivation of his constitutionally protected rights, *see*, *e.g.*, Pl.'s Opp'n at 11,

is inconsistent with binding precedent in this Circuit.  While the D.C. Circuit has recognized that

"due process normally requires pre-termination proceedings of some kind prior to the discharge

[of a career government employee]," *Thompson v. District of Columbia*, 428 F.3d 283, 287 (D.C.

Cir. 2005) (quoting *Wash. Teachers' Union Local # 6 v. Bd. of Educ.*, 109 F.3d 774, 780 (D.C.

Cir. 1997), the Court has recognized that "post-deprivation hearings suffice in 'extraordinary

situations where some valid governmental interest is at stake that justifies postponing the hearing

until after the event,'" *Wash. Teachers' Union Local # 6*, 109 F.3d at 780 (quoting *United States

v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993)).  Here, as previously noted, the

plaintiff's interest in obtaining reinstatement differed significantly from the interest enjoyed by

current public employees in their continued employment.  Nonetheless, even assuming

deprivation of the plaintiff's asserted interest would normally necessitate pre-termination

process, WMATA's compelling interest in ensuring that its employees—particularly those who

operate large vehicles on crowded city streets—are fit for duty, coupled with the extensive post-

termination process afforded under the Settlement Agreement, undermine any claim that the

plaintiff was denied due process in connection with his failed effort to obtain reinstatement.

Accordingly, the plaintiff cannot possibly win relief on his due process claim, and Count I is therefore dismissed for failure to state a claim upon which relief may be granted.

### D.   The Plaintiff Must Exhaust Available Remedies Under the CBA Before Pursuing His Contract Claims in this Court

Having concluded that the plaintiff fails to allege sufficient facts to support his due process claim, the Court next considers whether the plaintiff's allegations underlying his remaining contract claims are similarly lacking.  As explained below, because the plaintiff does not allege that he has exhausted his breach-of-contract claims through the grievance procedures available to him under the CBA and the Settlement Agreement, he is precluded from bringing these claims in this Court.

The plaintiff alleges two separate breach-of-contract claims arising out of WMATA's decision not to reinstate him.  First, the plaintiff alleges that, by failing to rehire him, WMATA breached § 104(d) of the CBA, which requires WMATA to have "sufficient cause" to "discharge, suspend, or otherwise discipline" a "covered employee."  Compl. ¶ 50.[5]  Second, the plaintiff alleges that, "[i]n light of [his] successful completion of all required conditions precedent," WMATA breached its contractual duty under the Settlement Agreement to reinstate the plaintiff to his prior position as a Bus Operator.  *Id.* ¶ 65.  In support, the plaintiff again alleges that he did not intend to submit the altered CPAP report under false pretenses and intended instead to explain the apparent discrepancies included on the report.  *Id.* ¶¶ 54–55, 67. Thus, the defendant claims that WMATA's decision not to reinstate him violated both the for-

---

[5]   While not addressed by the parties, the degree to which the plaintiff qualified as a "covered employee" during the period in question is far from clear.  As previously noted, *supra* Part III.C.2., at the time of the defendant's alleged breach, the plaintiff was not employed by WMATA.  Whether the defendant was "discharge[d], suspend[ed], or otherwise discipline[d]" in connection with the decision to cease reinstatement efforts is similarly unclear.  Nonetheless, because the Court concludes that the plaintiff has failed to exhaust his breach-of-CBA claim, these issues need not be resolved definitively to dispose of the instant motion.

cause protections provided to employees under the CBA, *id.* ¶¶ 60–61, and the terms of the

Settlement Agreement under which the plaintiff sought reinstatement, *id.* ¶¶ 63–67.

In response, WMATA proposes separate grounds for dismissing each of the plaintiff's

breach-of-contract claims.  First, again characterizing the plaintiff's breach-of-CBA claim as a

hybrid breach-of-CBA/breach-of-duty of fair representation, WMATA argues that the plaintiff

must allege *both* that WMATA breached the CBA *and* that the Union failed to fairly represent

him to make out a claim under the LMRA.  Def.'s Mem. at 7–8.  Since the plaintiff makes no

such allegation against the Union, *see supra* Part III.B., the defendant contends that his "hybrid"

claim must be dismissed.  *Id.*  Second, with regard to the plaintiff's claim that WMATA

breached the terms of the Settlement Agreement, the defendant argues that the plaintiff's failure

to pursue this claim under the grievance procedures provided under the CBA precludes him from

bringing this claim in this Court.  *Id.* at 8–10.

Though WMATA frames these respective grounds for dismissing the plaintiff's breach-

of-contract claims as distinct, they are in fact two sides of the same proverbial coin.  As

previously explained, *supra* Part III.A., plaintiffs alleging a hybrid breach-of-CBA/breach-of-

duty of fair representation claim against their employer and/or union need not exhaust their

claims before bringing suit, but are required to bring suit within six months of the alleged

violation.  By contrast, plaintiffs who allege *only* a breach-of-CBA claim against their employer

have far longer to file their claim under District of Columbia law, but must first exhaust any

grievance procedures available under the CBA.  *Id.*  In this light, the plaintiff's failure to allege

any breach of his Union's duty to fairly represent him in connection with his present breach-of-

CBA claim does not necessarily doom this claim before this Court on timeliness grounds.  By the

same token, however, because this claim turns on the interpretation the CBA between WMATA

and the plaintiff's union, this claim is governed by § 301 of the LMRA. *Cephas*, 520 F.3d at 484; *see also Davis v. Bell Atl.-W.V., Inc.*, 110 F.3d 245, 247 (4th Cir. 1997) ("[A] purportedly state law claim, the resolution of which depends substantially upon the analysis of a collective-bargaining agreement's terms, must either be treated as a claim under § 301 or be dismissed as preempted under federal labor law." (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985))).  As such, to survive the present motion, the plaintiff must point to sufficient factual allegations demonstrating that the plaintiff has exhausted any available remedy provided under the CBA. *DelCostello*, 462 U.S. at 163.[6]

For much the same reason, though the plaintiff casts his breach-of-CBA claim as distinct from his claim that WMATA breached the terms of the Settlement Agreement, this latter claim must also be exhausted before the plaintiff may pursue his claim in this Court.  Indeed, under "settled [D.C. Circuit] law, . . . WMATA employees who fail[] to exhaust the grievance and arbitration proceedings, available to them, may not seek redress in court on claims that could and should have been grieved." *Sanders*, 819 F.2d at 1158; *see also McMillan v. Wash. Metro. Area Transit Auth.*, 898 F. Supp. 2d 64, 69 (D.D.C. 2012) ("This rule amounts to a form of collateral estoppel, or issue preclusion, prohibiting non-grieved complaints from being brought when, as here, Plaintiff had the opportunity and the obligation to do so.").  As the Supreme Court has explained, allowing aggrieved employees to pursue unexhausted claims in federal court would "deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances." *Republic Steel Corp.*, 379 U.S. at 653; *see also*

---

[6]     To the extent that the plaintiff's claim alleging breach of the CBA stems from his initial termination in December 2011, this claim is precluded by the Settlement Agreement resolving any dispute arising from the plaintiff's termination. *Sanders v. Washington Metro. Area Transit Auth.*, 819 F.2d 1151, 1157–58 (D.C. Cir. 1987) (explaining that settlement agreements resolving grievances pursued under a CBA by WMATA employees generally preclude those employees from later renewing their claim in federal court); *see also Chester v. Washington Metro. Area Transit Auth.*, 335 F. Supp. 2d 57, 62 (D.D.C. 2004) ("If plaintiff objected to the settlement, he could have refused it and taken his grievance to arbitration.").

*Nat'l Treasury Emp. Union v. Kurtz*, 636 F.2d 411, 413 (D.C. Cir. 1980) ("The general rule requiring exhaustion of administrative remedies is applicable to labor-management disputes where the issue is subject to a contractual grievance and arbitration procedure.").  As noted above, *supra* Part I, the Settlement Agreement incorporated the grievance procedures provided under the CBA, providing that all disputes "arising from the interpretation or implementation of the [Settlement Agreement] . . . must be grieved separately under the terms and conditions of [the CBA]."  Under this Court's binding precedent, because the plaintiff had the opportunity and obligation to exhaust this available avenue for relief, failure to do so would bar the plaintiff from bringing his claim in this Court.

With this in mind, despite the plaintiff's repeated assertion that he was prepared to explain any discrepancies in the CPAP report, he makes no allegation that he made any effort whatsoever to challenge WMATA's decision to rescind his reinstatement.  *See generally* Compl. Instead, after receiving notice that WMATA had ceased its efforts to reinstate him and "eager to clear the misunderstanding," the defendant alleges that he obtained two additional sleep reports and attempted to provide these reports to the provider who accepted the initial, altered CPAP report.  *Id.* ¶ 32.  Yet, even armed with evidence purporting to demonstrate his fitness to return to duty, and even after consulting with the Union "to determine how the matter could be resolved," the plaintiff does not allege that he filed any formal grievance under the CBA before, nearly a year and a half later, filing the instant action.  *Id.*  Consequently, because the plaintiff fails to allege that he has exhausted, or even attempted to exhaust, the grievance process available to him under the CBA, which the parties incorporated by reference in the Settlement Agreement, each of his breach-of-contract claims must be dismissed for failing to state a claim upon which relief may be granted.

**IV.    CONCLUSION**

For the foregoing reasons, the plaintiff fails to allege sufficient facts to support any of his present claims against WMATA and has therefore failed to state a claim for which relief by this Court may be granted.  Accordingly, the defendant's motion to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), is granted.

Date: March 8, 2016

_____
BERYL A. HOWELL
United States District Judge